**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| **SHAUNTIS L. LEWIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 1:25 CV 219** |
| | ) | |
| **COSTCO WHOLESALE CORP.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**OPINION and ORDER**

Plaintiff Shauntis Lewis, a Black man and former employee of defendant Costco Wholesale Corporation, alleges that defendant discriminated and retaliated against him on the basis of his race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981. This matter is before the court on defendant's motion for summary judgment. (DE # 15.) For the reasons that follow, defendant's motion will be granted.

## I. BACKGROUND[1]

Plaintiff began his employment with defendant in August 2019. (DE # 18-13 at 2.) In September 2020, defendant promoted plaintiff to Tire Shop Installer. (DE # 18-2 at 4.) In October 2021, defendant promoted plaintiff to Tire Shop Supervisor. (*Id.*) Plaintiff reported to Tire Center Manager Dan Salliant. (*Id.*)

In April 2022, a customer came to the Tire Center to inquire about a lug nut that was missing from her tire. (DE # 18-14 at 2.) The parties dispute the details of the

[1] The following facts are undisputed unless otherwise noted.

conversation plaintiff had with the customer, but agree that in the end she did not get the lug nut replaced that day. (*Id.*) The customer later reported to defendant that her tire had fallen off. (*Id.*) Defendant investigated the incident and ultimately did not discipline plaintiff for failing to properly torque the customer's tire or for causing her tire to come off, but did issue plaintiff a counseling notice stating that he failed to provide fair, courteous, or respectful service. (DE # 18-2 at 5; DE # 18-14 at 2.)

In August 2023, defendant received reports from Tire Center employees that plaintiff was not following defendant's guidelines for torquing tires, specifically the requirement to tighten all lug nuts twice in a star pattern ("two-pass policy"). (DE # 18-2 at 5.) Defendant conducted an investigation into plaintiff's work in the Tire Center, which included reviewing video footage to determine whether plaintiff followed the two-pass policy when tightening lug nuts. (DE # 18-5 at 2-3.) The investigation revealed that in 27 out of 34 reviewed instances, plaintiff failed to follow the two-pass policy. (*Id.* at 3.) Plaintiff admitted to defendant that he does not comply with the two-pass policy. (DE # 18-3 at 42; DE # 18-2 at 5-6.)

As a result of defendant's investigation, plaintiff received three counseling notices: (1) for cutting employees from the Tire Center and/or leaving early without checking with the Front End Manager first; (2) for engaging in conduct that jeopardized his ability to perform his job responsibilities safely, competently, and/or honestly; and (3) for failing to follow proper protocol in regards to the 10-point release and final torque procedures. (DE # 18-17.) Defendant placed plaintiff on an unpaid suspension. Upon returning from his

suspension, defendant demoted plaintiff from the Tire Shop Supervisor to Front End Cashier. (DE # 18-2 at 6.)

While on suspension, plaintiff contacted Jenny Eisenhauer, defendant's Midwest Regional Operations Manager, to discuss "a transgression" at the Tire Center. (DE # 18-19 at 3; DE # 18-18 at 3.) He claims that when he spoke with Eisenhauer on the phone the "transgression" he referenced regarded racial discrimination. (DE # 18-3 at 13.)

During this time, plaintiff also raised concerns about Salliant's performance as a supervisor. (DE # 18-18 at 4-5; DE # 18-2 at 6.) Defendant conducted an investigation into plaintiff's complaints, which included questioning Tire Shop employees about the specific deficiencies plaintiff identified. (DE # 18-2 at 6; DE # 18-21 at 2-10.) Defendant ultimately issued Salliant advance performance coaching. (DE # 18-2 at 6; DE # 18-21 at 11.)

In February 2024, plaintiff was placed on an unpaid suspension after receiving five counseling notices in a six-month period, the last one for excessive tardiness. (DE # 18-23.) Plaintiff claims that his tardiness and absences were due to the loss of reliable access to a car after his demotion and/or because of his "asthmatic condition." (DE # 18-3 at 57, 58.)

In early 2024, plaintiff made a claim with defendant's third-party leave administrator for leave under the Family and Medical Leave Act (FMLA). (*Id.* at 58.) He did not get his request approved. (*Id.* at 56-57.)

On May 8, 2024, plaintiff received counseling notices for excessive tardiness and excessive policy violations, and was placed on an unpaid suspension. (DE # 18-24.)

On July 5, 2024, plaintiff received another set of counseling notices, including another for excessive policy violations and one for violating defendant's leave of absence policy. (DE # 18-26.)

Plaintiff testified that, following his demotion, he was singled out in retaliation for complaining to management about Salliant. (DE # 18-3 at 22; DE # 18-2 at 2.) Plaintiff was asked at his deposition whether his July 5, 2024, counseling notice for multiple absences was either discriminatory or retaliatory and plaintiff testified, "No, I am not stating that it is." (DE # 18-3 at 61.) He testified that he had no reason to believe that his ten counseling notices and six suspensions were related to his race. (*Id.*)

On July 11, 2024, plaintiff was issued another counseling notice after he committed a cash handling error of $133.70. (DE # 18-29 at 2.)

On July 24, 2024, plaintiff received two counseling notices: (1) for insubordinate conduct after he failed to comply with his supervisor's instructions; and (2) for excessive policy violations for accruing nine active counseling notices and four suspensions within a 12-month period. (DE # 18-30.) He was placed on a fifth unpaid suspension. (*Id.*) Defendant terminated plaintiff's employment on August 5, 2024, citing excessive policy violations. (DE # 18-33 at 2.)

Under defendant's Employment Agreement, disciplinary action can result from excessive tardiness. Excessive tardiness is defined as: (1) being tardy by four minutes or more on three separate occasions in a 30-day period; (2) two separate occasions of being

tardy by 30 minutes or more in a 30-day period; or (3) being tardy by 120 minutes on one occasion. (DE # 18-5 at 12.)

Discipline can also result from excessive absenteeism, which is defined in the Employee Agreement as two or more instances of absence in a rolling 12-month period. (*Id.*) A third and fourth absence in a 12-month period will result in a counseling notice. (*Id.*) A fifth absence in a 12-month period will result in a suspension. (*Id.*) A sixth absence in a 12-month period can result in termination. (*Id.*)

The Employee Agreement also states that excessive policy violations can result in immediate termination. (*Id.* at 8-9.) Excessive policy violations include three unpaid suspensions in a 12-month period. (*Id.* at 9.)

Defendant now moves for summary judgment. (DE # 15.) This matter is fully briefed and is ripe for ruling.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In responding to a motion for summary judgment, the non-moving party must identify specific facts establishing that there is a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Palmer v. Marion County*, 327 F.3d 588, 595 (7th Cir. 2003). In doing so, the non-moving party cannot rest on the pleadings alone, but must

present fresh proof in support of its position. *Anderson*, 477 U.S. at 248; *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The court's role in deciding a summary judgment motion is not to evaluate the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249-50. In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995).

## III. ANALYSIS

### *A. Plaintiff's Disputes of Fact*

Plaintiff attempts, via his affidavit, attached exhibits, and his responses to defendant's statement of material facts, to identify evidence for use in support of his opposition to summary judgment. He does not, however, include these facts in his own statement of material facts, as he is required to do by Local Rule 56-1(b)(2)(D). He also does not provide citations to evidence supporting most of these "responses" to defendant's statement of material facts, as he was required to do by Local Rule 56-1(b)(2)(C). The court does not consider any argument or unsupported assertion to be a material fact for purposes of resolving defendant's motion for summary judgment. *See*

*Cichon v. Exelon Generation Co.*, 401 F.3d 803, 810 (7th Cir. 2005) (district court did not abuse its discretion in disregarding most of plaintiff's proposed "facts" made only in response to movant's statement of material facts, and not in his own separate statement of material facts, as required by court's local rules). Furthermore, with regard to any of defendant's statement of facts to which plaintiff responded with unsupported, unrelated, conclusory, or argumentative statements, the court disregards plaintiff's response and deems defendant's fact admitted. *See* Fed. R. Civ. P. 56(e)(2) ("If a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion[.]").

*B. Race Discrimination*

Title VII[2] prohibits intentional discrimination in employment on the basis of statutorily proscribed factors, including race. 42 U.S.C. § 2000e-2(a)(1). In the present case, as in many discrimination cases, the parties' dispute hinges on causation: whether plaintiff's race caused his demotion and termination. *See Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). A plaintiff may prove discrimination "in a holistic fashion, by proffering direct or circumstantial evidence of intentional [] discrimination." *Wince v. CBRE, Inc.*, 66 F.4th 1033, 1040 (7th Cir. 2023) (cleaned up); *see also Joll v. Valparaiso Cmty. Sch.*, 953 F.3d 923, 929 (7th Cir. 2020). There are three broad types of circumstantial evidence that will support an inference of intentional discrimination: "ambiguous or

---

[2] "Because the same standard applies for discrimination claims under Title VII [and Section 1981] . . . our analysis proceeds under Title VII." *Wilson v. AIM Specialty Health*, 176 F.4th 977, 983 (7th Cir. 2026).

suggestive comments or conduct; better treatment of people similarly situated but for the protected characteristic; and dishonest employer justifications for disparate treatment." *Joll*, 953 F.3d at 929. Plaintiff has chosen to frame his argument taking this holistic view, and the court will frame its analysis in a similar manner.

The court finds that defendant has met its initial burden on summary judgment, establishing its non-discriminatory reasons for terminating plaintiff's employment. Therefore, the court proceeds to consider plaintiff's evidence in opposition to summary judgment. Plaintiff's response argues that there are four instances that would support a finding of discrimination. The court takes each in turn.

First, plaintiff claims that he complained to management about Salliant's substandard work, not taking plaintiff's complaints seriously, and not allowing plaintiff to take his breaks. (DE # 24 at 2.) He points to his affidavit and his response to defendant's statement of facts, which – as discussed above – were not properly submitted as material facts for this court's consideration. Nevertheless, the underlying facts on which he bases his argument were included in defendant's statement of material facts and supporting evidence and are therefore part of the record this court considers.

At the time of plaintiff's demotion, he raised a number of concerns he had regarding Salliant's performance to upper management. Management investigated the matter and Salliant received advanced performance coaching. (DE # 18-2 at 6.) Liberally reading plaintiff's brief, it appears plaintiff's argument is that he was demoted for his misconduct, but Salliant received a lesser form of discipline for his own misconduct. The

problem for plaintiff is that Salliant is not a sufficiently relevant comparator. Salliant was in a different role than plaintiff, reported to a different supervisor than plaintiff, and the complaints regarding Salliant's deficiencies were different in nature and severity to those plaintiff committed. (*See* DE # 23 at 10; DE # 18-21.) "[W]here the plaintiff alleges the employer disciplined him more harshly than his comparator, the most relevant similarities are those between the employees' alleged misconduct, performance standards, and disciplining supervisor." *Reives v. Illinois State Police*, 29 F.4th 887, 892 (7th Cir. 2022). "[I]n deciding whether two employees have engaged in similar misconduct, the critical question is whether they have engaged in conduct of comparable seriousness." *Peirick v. Indiana Univ.-Purdue Univ. Indianapolis Athletics Dep't*, 510 F.3d 681, 689 (7th Cir. 2007).

The complaints against Salliant were that he was absent, distracted employees while they worked, poorly managed workflow, and did not help out other employees. (DE # 18-21.) Plaintiff, on the other hand, was demoted after management was informed by other Tire Center employees that plaintiff was not following defendant's safety guidelines for properly torquing tires, and an investigation confirmed these allegations. Defendant's guidelines for securing tires is a policy to prevent a customer's wheel from later coming off the vehicle, which could pose a serious safety risk. (DE # 18-2 at 4.) Given the differences in seriousness of the offenses committed, no reasonable jury could conclude that the resulting differences in severity of discipline is evidence of discrimination.

Plaintiff also asserts that Salliant caused a wheel to come off of a customer's car, but did not receive any discipline, whereas plaintiff received a counseling notice when he

failed to service a customer's vehicle that was missing a lug nut. (DE # 24 at 3; DE # 23 at 13.) This is not evidence of better treatment of a non-Black person because plaintiff does not cite to any evidence suggesting that management ever was notified that Salliant was responsible for a "wheel off." The evidence in the record is that Salliant has never been found responsible for a wheel coming off a customer's car. (DE # 18-2 at 6.) *See Gaines v. K-Five Const. Corp.*, 742 F.3d 256, 263 (7th Cir. 2014) (holding that defendant was entitled to summary judgment because no evidence showed that the decisionmakers knew about comparators' behavior); *Latif v. FCA US, LLC*, No. 119CV03851SEBMPB, 2022 WL 394703, at *9 (S.D. Ind. Feb. 9, 2022) ("Lacking specific evidence establishing that [managers] were aware of any other employee(s) making repeated mistakes commensurate in seriousness to hers, Ms. Latif has failed to show that any similarly situated white employee was treated more favorably."); *Miller v. Express, LLC*, No. 3:19-cv-50341, 2021 WL 3737734, at *7 (N.D. Ill. Aug. 24, 2021) ("[I]f facts giving rise to a comparison between differently treated employees is supposed to imply discrimination because of a protected class, then those facts must be known by the person responsible for making the adverse employment decision.").

Next, plaintiff argues that his counseling notice regarding the missing lug nut was discriminatory. (DE # 24 at 3.) It is not clear what plaintiff believes was discriminatory about this counseling notice, because his brief conflates the lug nut incident with defendant's investigation more than a year later into plaintiff's failure to comply with the company's torquing procedures. That plaintiff believes his explanation for failing to

service the member's missing lug nut in 2022 should have been accepted without receiving a counseling notice is not, without more, evidence of discrimination.[3]

Finally, plaintiff claims that his demotion from Tire Center Supervisor to Front End Cashier was discriminatory. (DE # 24 at 3.) He admits that he did not perform two passes when torquing tires, but claims that "everyone else in the department" also did not follow this policy. (*Id.*)

First, plaintiff again fails to identify any evidence from which it could be inferred that defendant was aware that other Tire Center employees were not in compliance with the policy. *See Gaines*, 742 F.3d at 263; *Latif*, 2022 WL 394703, at *9; *Miller*, 2021 WL 3737734, at *7.

Second, plaintiff fails to submit specific evidence of similarly situated comparators who did not follow the policy, but were treated more favorably. Rather, he asserts in a conclusory manner that this was a wide-spread failure to follow company policy, but he was the only one disciplined. "Summary judgment is not a time to be coy: conclusory statements not grounded in specific facts are not enough. The non-movant must cite to particular parts of materials in the record." *Sommerfield v. City of Chicago*, 863 F.3d 645, 649 (7th Cir. 2017) (cleaned up); *see also Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887,

---

[3] Defendant objects to the inclusion of this as an independent claim on the basis that it is untimely. (DE # 16 at 10.) While defendant is correct that this incident occurred more than 300 days prior to plaintiff's initial EEOC complaint in April 2024 and is therefore untimely as an independent claim for purposes of Title VII (*see* 42 U.S.C. § 2000e-5(e)(1)), plaintiff has also brought this claim under § 1981, which has a longer statute of limitations period and no exhaustion requirement. *See* 28 U.S.C. § 1658(a); *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 539 (7th Cir. 2007).

898 (7th Cir. 2018) (deeming conclusory comparator allegations waived where plaintiffs failed to offer evidence about comparator, including her position, her supervisor, and her disciplinary record and performance reviews); *Gabrielle M. v. Park Forest–Chi. Heights, Ill. Sch. Dist. 163*, 315 F.3d 817, 822 (7th Cir.2003) (approving of exclusion of statements that supervisor treated African Americans more harshly, African Americans were required to do more work, and were disciplined for reasons non-African Americans were not; "Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted." (quotation marks omitted)).[4]

Without knowing who these other policy-violators are, it cannot be ascertained whether they are similarly situated comparators. We cannot know if they shared a supervisor with plaintiff, whether plaintiff's discipline was more severe because he was a supervisor, whether any difference in treatment could be attributed to the fact that plaintiff – as a supervisor – was presumably tasked with enforcement of the policy among his subordinates, etc. Simply claiming that "everyone else" committed the same policy

[4] Plaintiff also fails to set the appropriate foundation for *how* he would know that he was the only one disciplined. Without any specific factual support, the court cannot reasonably assume that he would have personal knowledge of other employee's disciplinary records. *See e.g. Simpson v. Franciscan All., Inc.*, 827 F.3d 656, 662 (7th Cir. 2016) (plaintiff failed to supply foundation for claim of personal knowledge that other employees were not disciplined for engaging in similar conduct as plaintiff).

violations that he did, without pointing to more specific evidence, is insufficient to create a triable question of fact on the issue of discrimination.

The court has considered each individual claim plaintiff identifies and determined that, individually, these incidents do not raise a reasonable inference of discriminatory intent. Moreover, even when considered as a whole, plaintiff has not raised a reasonable inference of discriminatory intent. Defendant is entitled to summary judgment on plaintiff's discrimination claim.

*C. Retaliation Claim*

Finally, defendant seeks summary judgment on plaintiff's retaliation claim.[5] Plaintiff's retaliation claim is not precluded by the fact that defendant is entitled to summary judgment on the underlying discrimination claim. *See Squibb v. Mem'l Med. Ctr.*, 497 F.3d 775, 786 (7th Cir. 2007).

To establish a retaliation claim, plaintiff must show that he: (1) engaged in a statutorily protected activity; (2) suffered an adverse employment action; and (3) there is a causal link between the two. *Golat v. Skwierawski*, 184 F.4th 938, 956 (7th Cir. 2026).

In his brief, plaintiff argues that defendant retaliated against him by issuing him "an avalanche" of disciplinary actions (tardies, absences, counselings, suspensions, and ultimately termination), because prior to his demotion he complained to Eisenhauer about being singled out based on his race. (DE # 24 at 4.) But, plaintiff admits in the same

---

[5] The same prima facie requirements apply to Title VII and Section 1981 claims. *Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 404 (7th Cir. 2007), *aff'd*, 553 U.S. 442 (2008).

paragraph of his brief that his demotion to Cashier "caused him to experience tardiness and mis punches (sic), all relating to economic problems (including the repossession of his automobile), which interfered with his ability to go to work." (*Id.*) He also claims he suffered asthma-related absences and could not get FMLA leave approved. (*Id.*) Based on his own admissions and explanations for his repeated tardiness and unexcused absences, no reasonable jury could find that his termination was retaliatory.

## IV. CONCLUSION

Defendant's motion for summary judgment (DE # 15) is **GRANTED.** The court directs the Clerk to **ENTER FINAL JUDGMENT** stating:

> Judgment is entered in favor of defendant Costco Wholesale Corporation *doing business as* Costco Wholesale, and against plaintiff Shauntis Lewis, who shall take nothing by way of the complaint.

**SO ORDERED.**

Date: September 21, 2026

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT